**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RITA P. FOREMAN,**

   **Plaintiff,**

**v.**                **Case No.  8:09-cv-00932-T-24AEP**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

   **Defendant.**
              /

## **REPORT AND RECOMMENDATION**

Plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and Supplemental Security Income payments.[1]  For the reasons set out herein, I recommend that the decision be affirmed.

**I.**

Plaintiff was forty-five years of age at the time of her administrative hearing on October 24, 2006.  (Tr. 527.)  She stands 5' 3" tall and weighs approximately 150 pounds.  (Tr. 497.) Plaintiff has a ninth-grade education and is able to communicate in English.  (Tr. 22, 68, 75.)  On February 7, 2002, Plaintiff filed a Title II application for disability benefits and a Title XVI application for supplemental security income, alleging disability beginning July 1, 2001, due to various musculoskeletal impairments, back pain, and depression.  (Tr. 62, 69.)  Plaintiff's claims were denied originally and upon reconsideration.  (Tr. 44, 52.)  Plaintiff appealed the decision

---

[1] This matter comes before the undersigned pursuant to the Standing Order of this Court dated May 22, 2009.  (Dkt. No. 5.)  *See also* Local Rule 6.01(c)(21).

to an Administrative Law Judge ("ALJ"). (Tr. 387.) The ALJ held an administrative hearing on December 9, 2003, and took testimony from Plaintiff and a vocational expert. (Tr. 495-521.) The ALJ rendered an unfavorable decision on March 26, 2004. (Tr. 368-83.) Plaintiff then appealed the ALJ's decision to the Appeal's Council who vacated the decision on multiple grounds on April 16, 2006. (Tr. 402-05.)

On remand, the ALJ held another hearing on October 24, 2006. (Tr. 524-548.) The ALJ took testimony from Plaintiff, her friend Thomas Smith, and a vocational expert. (*See id.*) Plaintiff was represented by counsel at each hearing. (Tr. 495, 524.) During the 2004 and 2006 hearings Plaintiff testified that she was unable to work due to severe back, neck, and leg pain, depression and an inability to get along with others. (Tr. 498, 501, 502, 533)

Before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary. The ALJ found that Plaintiff had severe impairments consisting of degenerative disease of the right knee, mild degenerative disc disease and mild facet disease of the lumbar spine, major depression, recurrent, anxiety disorder (post-traumatic stress disorder) and a history of polysubstance abuse in remission. (Tr. 19.) Based upon the testimony of the Plaintiff and her sporadic work history, the ALJ concluded that she had no past relevant work. (Tr. 22.) However, in view of the record, the ALJ found that Plaintiff had the residual functional capacity to perform a wide range of sedentary work. (Tr. 20.) Further, based upon the testimony of the vocational expert, the ALJ determined that considering Plaintiff's age, education, work experience, and residual functional capacity, the Plaintiff could perform work which exists in significant numbers in the national and local economy, such as medical supplies assembler, surveillance systems

monitor, or a data checker. (Tr. 23.) Therefore, the ALJ found Plaintiff not disabled. (Tr. 23-24.)

The Appeals Council denied Plaintiff's request for review (Tr. 6) and Plaintiff subsequently filed the instant action (Dkt. No. 1).

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id*. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 1035 (2005). The Commissioner must apply the correct law and demonstrate that he has

done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[2] Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The ALJ, in part, decided Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These Regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment, but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." *Id.* § 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. *Id.* § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. *Id.* § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

### III.

Plaintiff challenges the ALJ's decision on four grounds:

(1) the ALJ erred in evaluating Plaintiff's subjective complaints of pain;

(2) the ALJ erred in not giving proper weight to the testimony of Plaintiff's friend, a lay witness;

(3) the ALJ failed to pose a complete hypothetical question to the VE; and

(4) the ALJ erred in finding that Plaintiff has the ability to perform other work in the national economy.

For the reasons discussed below, none of the contentions warrants reversal.

**A.     The ALJ's Evaluation of Plaintiff's Complaints of Pain.**

Plaintiff first argues that the ALJ erred in evaluating the Plaintiff's complaints of pain and subjective symptoms. (Dkt. No. 15 at 3-4.) Specifically, Plaintiff contends that the ALJ

incorrectly applied the pain standard and failed to articulate reasons for not finding Plaintiff entirely credible. (*Id.* at 4-5.)

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints. As the Court of Appeals explained in *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "require[s] evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." This standard also applies to complaints of subjective conditions other than pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discounts Plaintiff's testimony concerning subjective complaints, he must "articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir.1995)).

In the instant case, the ALJ applied the appropriate legal standard in evaluating Plaintiff's subjective complaints. The ALJ found Plaintiff met the initial burden by showing evidence of an underlying medical condition, however the ALJ found Plaintiff's "complaints of pain and incapacitation [were] not credible when viewed in light of the medical findings and the claimant's own testimony." (Tr. 21.)

In arriving at this conclusion, the ALJ explicitly discussed a number of reasons for rejecting Plaintiff's allegations of pain, and therefore the Court finds her credibility determination supported by substantial evidence. In concluding that Plaintiff was not entirely credible, the ALJ found that Plaintiff's activities of daily living demonstrated her impairments were not as severe as reported. For example, although Plaintiff contended that she was unable to perform even some

sedentary work, Plaintiff testified that she was able to perform household chores, prepare meals, lift up to 30 pounds, took public transportation, drove, and shopped.  (Tr. 21, 534, 535, 537.)  The ALJ further stated in her decision that Plaintiff's "mental disorder did not effect her ability to take public transportation; manage her finances and . . . she was able to drive; read a newspaper and go grocery and apparel shopping."  (Tr. 21, 90-91, 109.)

Additionally, the ALJ pointed to objective medical evidence in discrediting Plaintiff's subjective complaints.  The ALJ noted that although Plaintiff complained of breathing difficulties due to exacerbation of her asthmatic condition, a chest x-ray in December 2001, found no acute findings.  (Tr. 21, 227.)  Further, physical examinations pertaining to Plaintiff's complaints of back pain revealed only mild degenerative disc disease without any evidence of disc herniation, with only a slight decrease in range of motion and tenderness of the lumbar spine.  (Tr. 21, 246-48.)  Moreover, the ALJ noted "there was no evidence of muscle wasting; atrophy or a positive straight leg raise test, seated or supine."  (Tr. 21, 246.)

With respect to Plaintiff's mental impairments, the ALJ found that despite Plaintiff's complaints that she was unable to concentrate and remember, psychological testing revealed no serious deficits.  (Tr. 22, 259.) The ALJ also gave weight to the medical opinions given by the State Agency examiners and of mental health consultants whose opinions were "generally consistent with the examining and treating physician's objective medical findings."  (Tr. 22.)

Plaintiff argues that the ALJ's credibility determination was flawed because the ALJ did not specifically discuss Plaintiff's complaints of side effects resulting from taking prescription medications.  (Dkt. No. 15 at 5.)  However, as explained in *Dyer*, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as

the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court] to conclude that the ALJ considered [Plaintiff's] medical condition as a whole." *Dyer*, 395 F.3d at 1211.  Here, the ALJ considered Plaintiff's medical condition as a whole and made a credibility determination that the Court finds is supported by substantial evidence.

Plaintiff's reliance on *Cowart v. Schweiker*, 662 F.2d 731, 737 (11th Cir. 1981), is misplaced.  In *Cowart* the Eleventh Circuit found that the ALJ failed to develop the record fully because he did not elicit testimony or make findings regarding the effect of the claimant's prescribed medications.  However, in *Cowart* the claimant was not represented by counsel and therefore in that case the ALJ had a "special duty" to scrupulously and conscientiously probe into all the relevant facts.  *Cowart*, 662 F.2d at 735.  In contrast with *Cowart*, the court in *Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (11th Cir. 1985), found that the ALJ did not fail to develop the record fully where the claimant was represented by counsel, the claimant merely stated that the drugs made her drowsy, and it was not alleged that the side effects of drugs contributed to her disability.

Thus, *Cowart* is more about the ALJ's duty to develop the record rather than the appropriateness of an ALJ's credibility determination.  In any event, this case is more like *Cherry* than *Cowart*.  Here, Plaintiff was represented by counsel at the administrative hearing, unlike in *Cowart*.  Additionally, unlike in *Cowart*, the ALJ elicited testimony from Plaintiff regarding side effects from her medications.  (Tr. 536.)  Plaintiff's only complaints regarding the side effects of her medications were that it made her "dizzy" and sometimes bothered her stomach if she took her medication too close together.  (*Id.*)

The Court notes that Plaintiff's counsel had an opportunity at the hearing to elicit further testimony on the subject, but failed to conduct an exchange with his client demonstrating how the side effects from her medications affected her ability to work. Although the ALJ has a basic duty to fully and fairly develop the record, *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987), the ALJ is not required to act as counsel to develop a plaintiff's case. *See Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982) (*citing McConnell v. Schweiker*, 655 F.2d 604, 606 (5th Cir. 1981)). Thus, the Court finds that Plaintiff's reliance on *Cowart* is misguided because the ALJ had no special duty to develop the record, rather that burden rested with Plaintiff's counsel. The ALJ elicited testimony from Plaintiff at the hearing and Plaintiff did not allege that the side effects affected her ability to work. Therefore, the ALJ's failure to inquire further (or her failure to specifically refer to that testimony in the decision), did not deprive Plaintiff of a meaningful opportunity to be heard. *See Cherry*, 760 F.2d at 1191 n.7. Accordingly, the Court finds that the ALJ did not fail to fully and fairly develop the record.

Further, the Court finds that the ALJ's failure to specifically refer to the side effects of Plaintiff's medications does not imply that the ALJ's residual functional capacity determination was erroneous. It is Plaintiff's burden to prove that she is disabled, and, consequently, she is responsible for producing evidence in support of her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). Here, Plaintiff's memorandum fails to cite to any evidence in the record (including the testimony at the hearing) in support of her argument that the side effects from her prescription medications affected her ability to work. Thus, Plaintiff's conclusory argument fails to comply with the Court's scheduling Order (Dkt. No. 13) requiring her to identify with

particularity the discrete grounds upon which the administrative decision is being challenged, with citations to the record of the pertinent facts.

Rather, contrary to Plaintiff's argument, upon the Court's review of the record, the Court has found that Plaintiff reported *no* side effects from her medication on one occasion (Tr. 96) and denied dizziness on two occasions (Tr. 243, 343). The *only* evidence of record the Court has found that arguably supports Plaintiff's claim regarding side effects from her medications is an October 2006, letter from Dr. Dow who treated Plaintiff from August to October 2006. (Tr. 450.) Dr. Dow opined, in part, that Plaintiff's concentration, persistence, and pace were "moderately limited due to her depressive symptoms and side effects from medications." Of note, Dr. Dow's report was explicitly considered and discussed by the ALJ. (Tr. 20.) Moreover, the mental limitations that the ALJ found credible (and which were incorporated into Plaintiff's residual functional capacity) matched those limitations recommended by Dr. Dow. (Tr. 22.) Thus, to the extent that the ALJ erred by not specifically referring to the side effects of Plaintiff's medications, that err is harmless as the residual functional capacity provided by the ALJ reflected any potential effects Plaintiff's medications had on her ability to work.

In conclusion, the Court finds that the ALJ did not err by failing to specifically refer to the side effects of Plaintiff's prescribed medications. With respect to the ALJ's credibility determination, it is clear to the Court that the ALJ found Plaintiff not entirely credible based on the entire record as a whole. The ALJ concluded that the claimant is not "symptoms-free," but rather "that the claimant's complaints of pain and incapacitation [were] not credible when viewed in the light of the medical findings and the claimants own testimony." (Tr. 21.) Therefore, the Plaintiff's subjective complaints were considered by the ALJ, who made a credibility

determination supported by substantial evidence. In other words, Plaintiff has not established that the evidence of record compels a different credibility determination or that the ALJ erred in her pain analysis. Additionally, the Court finds that the ALJ fully and fairly developed the record concerning the side effects from Plaintiff's medications, and that Plaintiff did not meet her burden to show how her medications affected her ability to work in a way not accounted for by the ALJ's residual functional capacity. Indeed, the only evidence of record supporting Plaintiff's argument was explicitly considered by the ALJ, and the mental limitations suggested by that evidence are reflected in Plaintiff's residual functional capacity.

### B.     The ALJ's Consideration of the Lay Witness Testimony.

Plaintiff's second argument is that the ALJ erred in failing to give proper weight to the testimony of the Plaintiff's friend Thomas Smith, a lay witness. (Dkt. 15. at 5-6.) Plaintiff asserts that the ALJ erred by failing to discuss or consider Mr. Smith's testimony in the decision. (*Id.* at 6.)

Generally, the ALJ must "state specifically the weight accorded each item of evidence and the reasons for his decision." *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). However, where the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, there is no error if the credibility determination was implicit in the rejection of the claimant's testimony. *Osborn v. Barnhart*, 194 Fed. App'x 654, 666 (11th Cir. 2006) (*citing Tieniber v. Heckler*, 720 F.2d 1251, 1254-55 (11th Cir. 1983)).

In *Osborn*, the claimant's wife submitted a third party statement that complemented the subjective complaints made by the claimant. *Osborn*, 194 Fed. App'x at 666. The court found that the "ALJ clearly rejected Osborn's subjective testimony regarding the disabling nature of

11

his condition, and, therefore, while the ALJ could have mentioned Mrs. Osborn's statements, we conclude that the ALJ's specific and explicit credibility determination as to Osborn's testimony sufficiently implies a rejection of Mrs. Osborn's testimony as well." *Id.*

Likewise, in this case the Court finds that the ALJ implicitly rejected Mr. Smith's testimony by making a specific finding as to Plaintiff's credibility. Although the ALJ did not mention Mr. Smith's testimony, as discussed above, the ALJ did not find the testimony of the Plaintiff entirely credible. (Tr. 21.) Additionally, Mr. Smith's statements do not add any new relevant information, as they directly parallel the Plaintiff's subjective statements that she cannot get out of bed a few times a month, has back pain, and does not get along well with others. (Tr. 534, 539, 541, 542.) Therefore, the ALJ was not required to articulate any reason for rejecting the lay testimony of Mr. Smith as it can be implied the ALJ discounted that testimony when he made his credibility determination of Plaintiff. As such, the ALJ did not err by not specifically discussing Mr. Smith's testimony.

### C.     The ALJ's Hypothetical to the Vocational Expert.

Plaintiff next argues that the ALJ did not fully consider all of Plaintiff's impairments and therefore failed to incorporate all of Plaintiff's restrictions in posing a proper hypothetical to the VE. (Dkt. 15 at 7.) Plaintiff argues that the ALJ did not consider Plaintiff's alleged limitations of being bedridden several days a month along with the side effects of her medications in crafting Plaintiff's residual functional capacity. (*Id.*) However, the Court finds that the ALJ properly considered the combined effect of all of Plaintiff's impairments in determining Plaintiff's residual functional capacity. Indeed, the ALJ expressly stated that Plaintiff "does not have an impairment or combination of impairments that meets or medically

equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." (Tr. 20.) The Eleventh Circuit has held that such a statement demonstrates that the ALJ considered the combined effect of Plaintiff's impairments. *Wilson,* 284 F.3d at 1224-25. As explained below, the Court also finds that the hypothetical posed to the VE included all of Plaintiff's impairments.

"In a disability determination, once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Jones v. Apfel*, 190 F.3d 1224, 1228-29 (11th Cir. 1999) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). While often the Commissioner meets this burden by relying on the grids, "[w]hen the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills, exclusive reliance on the grids is inappropriate." *Id.* "In such cases, the Commissioner's preferred method of demonstrating that the claimant can perform other jobs is through the testimony of a VE." *Id.* In these instances, "[i]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Id.* (*citing McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

The ALJ found Plaintiff had the residual functional capacity to perform a wide range of sedentary work and had no past relevant work. (Tr. 20, 22.)  Thus, it was the Commissioner's burden to prove that jobs existed in the national economy given Plaintiff's impairments. Here, the ALJ found that Plantiff could perform a wide range of sedentary work. (Tr. 20.) Specifically, the ALJ found Plaintiff:

> can lift and carry ten pounds occasionally and five pounds frequently. She can sit for six-hours out of an eight-hour workday and walk and stand for two-hours out of an eight-hour work day but requires a sit/stand option at her discretion . . . [she] can occasionally bend; stoop; climb stairs and ramps but must never crouch; kneel; crawl or climb ladders, scaffolds or ropes. She can have no exposure to gases; other pollutants or extreme weather conditions, i.e., heat and cold. Secondary to her mental limitations, she can occasionally interact with co-workers; supervisors or the public and is unable to perform detailed or complex tasks. *(Id.)*

These limitations were included in the hypothetical posed to the VE who testified that an individual of the same age, education, and work experience as Plaintiff, with Plaintiff's residual functional capacity, could work as a medical supplies assembler, surveillance systems monitor, or a data checker. (Tr. 23, 546-547.)

Plaintiff asserts that the hypothetical failed to account for her inability to get out of bed several days each month and the side effects from her medications. However, the Court finds that the ALJ did not disregard Plaintiff's impairments in formulating Plaintiff's residual functional capacity. The ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," before arriving at Plaintiff's residual functional capacity. (Tr. 20.) The ALJ, however, "[is] not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Commissioner of Social Security*, 363 F.3d. 1155, 1161 (11th Cir. 2004). As discussed earlier, the ALJ found Plaintiff's testimony not entirely credible and was not required to include the limitation of being bedridden several days a month. Additionally, as discussed above, Plaintiff failed to carry her burden to show how the side effects from her medications affected her ability to work in a way not already accounted for by the

14

ALJ's residual functional capacity.[3] Therefore, the Court finds the ALJ constructed a proper hypothetical question based upon the medical evidence and Plaintiff's residual functional capacity.

### D. The ALJ Properly Determined that Plaintiff has the Ability to Perform Other Work in the National Economy.

The last argument presented is that the ALJ erred in finding Plaintiff could perform other work in the national economy. (Dkt. No. 15 at 7-9.) Plaintiff argues that there is no other work in the national economy because the vocational expert testified that no jobs existed that would allow the Plaintiff to "lie down frequently or recline as needed." (Tr. 547.) Additionally, the VE testified that being absent more than one day a month would preclude employment. (Tr. 547.) Plaintiff's argument is premised on a mistaken belief that because the ALJ gave various hypotheticals to the VE with additional limitations, she necessarily found those additional limitations to be credible. In creating a hypothetical question for the VE to consider, the ALJ "must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson*, 284 F.3d at 1227. However, the ALJ's hypothetical "need only include 'the claimant's impairments,' not each and every symptom of the claimant." *Ingram v. Commissioner of Social Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (*quoting Wilson,* 284 F.3d at 1227). Moreover, the ALJ does not have to consider characteristics that are not supported by the medical record or which were alleviated by medications. *Id.*; *see also Jones v. Barnhart*, 364 F.3d 501,

---

[3] As discussed previously, the Court notes the ALJ did not completely discredit all of Plaintiff's subjective complaints or Dr. Dow's suggested limitations. The ALJ found Plaintiff had moderate difficulties in maintaining social functioning and concentration and therefore limited Plaintiff in her interactions with co-workers, her supervisors, and the public, and limited Plaintiff to unskilled work with no detailed or complex tasks. (Tr. 22, 450, 546-47.)

506 (3d 2004) (finding that the ALJ was not required to accept assumptions posited to the VE where the evidence in the record was inconsistent with those assumptions).

In reviewing the relevant medical records and testimony the ALJ determined that the Plaintiff was not credible as to whether she would be incapacitated and therefore bedridden for multiple days out of the month. (Tr. 21.) The ALJ noted that "to the extent the claimant contends that she would be rendered by her subjective complaints completely incapable of performing even some sedentary work, the undersigned finds these contention [sic] to be less than entirely credible when compared to the record as a whole." (Tr. 21.) Thus, it is apparent that the ALJ found Plaintiff's subjective complaints regarding her inability to go to work a number of days a month not credible in formulating Plaintiff's residual functional capacity. The residual functional capacity arrived at by the ALJ, and posited to the VE in a proper hypothetical, is supported by substantial evidence. Therefore, the Court finds that the ALJ did not err in concluding that work existed in the national and local economy that Plaintiff can perform.

**IV.**

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. Accordingly, I recommend that the decision be **AFFIRMED**.

**IT IS SO REPORTED** at Tampa, Florida on this 3rd day of August, 2010.

ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Susan C. Bucklew
Counsel of Record